[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15915
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-00916-TMP

LEWIS FLOYD, JR.,

                                                          Plaintiff - Appellant,

versus

DUANE CORDER,
individually and in his capacity
as a Deputy Sheriff of Jefferson
County Sheriff Department,

                                                          Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 13, 2011)

Before HULL, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Lewis Floyd appeals the court's dismissal of his lawsuit against Jefferson County Deputy Sheriff Duane Corder. Floyd brought suit against Deputy Sheriff Corder pursuant to 42 U.S.C. § 1983, alleging that he used unreasonable and excessive force in violation of Floyd's Fourth Amendment rights by tasing Floyd three times in the course of making an arrest. The court granted Deputy Sheriff Corder's Motion for Judgment on the Pleadings, finding that he was entitled to qualified immunity because the law was clearly established at the time of the incident—October 23, 2007—"that a taser could be employed on a noncompliant suspect where the crime alleged was minor, and even where no violence had occurred." Floyd appeals, arguing that Deputy Sheriff Corder was not entitled to qualified immunity. For the following reasons, we affirm.

Floyd argues that Deputy Sheriff Corder violated his clearly established constitutional rights because, at the time of the tasing, he was unarmed, was not disorderly, was not acting in an unreasonable manner, posed no threat of harm to Deputy Sheriff Corder or others, was not physically resisting arrest when assaulted, and was not disturbing the peace. The facts of the incident are summarized in the court's opinion:

> Floyd arrived at school about the time that the school day ended to pick up his nephew. He found out from a school employee, Bridgette Willis, that the nephew was in a

2

tutoring session, when he was supposed to be in detention. Willis went to get the nephew from the classroom, but Floyd followed her. Floyd's nephew left the classroom with him, and the school employee walked in front of them back toward the school office. At one point, she believed that she heard a noise that sounded like Floyd hitting the child. Being alarmed, Willis summoned Deputy Corder from the school office, because she wanted his assistance "when a parent gets upset." Willis told Corder that she though[t] Floyd had hit the student. Corder confronted Floyd in a breezeway between the school buildings, but Floyd did not respond. He continued moving toward his nephew. Corder put his hand up to stop Floyd from moving toward the nephew, but Floyd pushed or hit Corder's hand away. Corder then pulled out his taser and told Floyd to get on the ground. Floyd did not comply, but continued to walk away and toward an entrance to the school. Corder again told Floyd to stop, but he kept going. Corder then fired the taser at him three times, causing Floyd to fall to the ground. At the time, Corder had no handcuffs with him . . . so he summoned help from another deputy.[1]

Deputy Sheriff Corder used his taser gun three times since Floyd did not react to the first tase and because Deputy Sheriff Corder did not think he made contact with Floyd on the second tase. Following this incident, Floyd was arrested and charged with domestic violence, harassment, disorderly conduct, and resisting arrest.

---

[1] Floyd attached to his amended complaint a transcript of testimony given during his criminal trial. The transcript contained testimony from two witnesses: Ms. Willis and Deputy Sheriff Corder. Floyd stated in his amended complaint that the transcript was attached and "fully incorporated" into the complaint. Thus, the court considered the trial transcript in assessing the merits of the Rule 12(c) motion.

Floyd does not dispute that Deputy Sheriff Corder was acting within the scope of his discretionary authority at the time of the incident. Thus, the burden is on Floyd to show that Deputy Sheriff Corder was not entitled to qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). To defeat qualified immunity, the plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id*. We can address either prong first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

We find that even assuming Deputy Sheriff Corder's use of force was excessive, he would still be entitled to qualified immunity because Floyd cannot show that, on the day of the tasing, it was "clearly established" that such force was excessive. Floyd cites one taser case to try and meet his burden: *Powell v. Haddock*, 366 F. App'x 29 (11th Cir. 2010) (per curiam). First, we note that this unpublished case is not binding. Moreover, the facts of *Powell* differ markedly from the facts of the instant case: "As to Deputy Rackard's use of his taser, Powell had simply taken steps away from Deputy Stone before Deputy Rackard deployed his taser the first time, and Powell was on the ground and unable to resist when Deputy Rackard tasered her a second time." *Id*. at 31. The suspect in *Powell* was non-threatening. *Id.* at 30–31.

4

By contrast, Floyd *was* threatening: he was believed to have struck his nephew in Ms. Willis' presence, he was yelling at his nephew as Deputy Sheriff Corder arrived, he refused to cooperate with Deputy Sheriff Corder's attempts to assess the situation, he made a move towards his nephew after Deputy Sheriff Corder arrived, he hit Deputy Sheriff Corder's hand away when Deputy Sheriff Corder attempted to intervene, he refused to get on the ground after being ordered to do so, and he refused to stop when ordered to do so. Thus, *Powell* does not show that it was "clearly established" on October 23, 2007, that Deputy Sheriff Corder's use of his taser constituted excessive force.

Moreover, *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), indicates that, at the time of the incident, our case law established that the use of a taser in a similar situation did not violate the suspect's constitutional rights. In *Draper*, the suspect was not armed, was not attempting to flee, and there was no violence or report of violence concerning the suspect. *See generally id.* at 1272–74. Instead, the suspect refused to get documents that the officer requested and was "hostile, belligerent, and uncooperative." *Id.* at 1278. We found that the officer's use of a taser "was reasonably proportionate to the difficult, tense and uncertain situation that [the officer] faced at this traffic stop, and did not constitute excessive force." *Id.* In fact, the use of the taser "may well have prevented a physical struggle and

5

serious harm" to the officer and the suspect. *Id.* Thus the existing law at the time of the incident did not put Deputy Sheriff Corder on notice that deploying his taser three times to subdue a noncompliant suspect where the underlying crime was minor and where no violence had occurred violated Floyd's constitutional rights.[2]

In conclusion, even if Deputy Sheriff Corder's use of his taser constituted excessive force, he is entitled to qualified immunity because his actions did not violate Floyd's "clearly established rights." Accordingly, we affirm the judgment of the court.

**AFFIRMED.**

---

[2] Floyd also relies on *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002), a case involving pepper spray, to argue that Deputy Sheriff Corder violated his clearly established constitutional rights. But because the facts of *Draper* are more similar to the case at hand, *Vinyard* does not entitle Floyd to relief.